UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JOHNNY RILEY,

                   Plaintiff,

                            Case No. 2:25-cv-172

v.

                            Honorable Maarten Vermaat

J. NEAL et al.,

                   Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.24.)

This case is presently before this Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will **partially** dismiss Plaintiff's complaint for failure to state a claim as detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following nine KCF staff members: Correctional Officer **J. Neal**, Sergeant **Unknown Smith**, Sergeant **Unknown Harrison**, Grievance Coordinator **R. Voorhees**, Correctional Officer **Unknown Plont**, Resident Unit Manager **Unknown Batheaos**,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Warden **Jeffrey Howard**, Correctional Officer **Unknown Lawson**, and Lieutenant **Unknown Hoolsema**. (Compl., ECF No. 1, PageID.1–3.)

In Plaintiff's complaint, he alleges that on February 13, 2024, he was "laying in [his] bunk watching [his] T.V." when Defendant Neal "came into [Plaintiff's] cube irritate[d] and screaming and cursing, stating: 'You know I didn't call you the N word or threaten you.'"[2] (*Id.*, PageID.4.) Plaintiff remained on his bunk, and Defendant Neal "continued with his harassment, stating: 'I know you can hear me, you little sh[\*\*]; this little game you [are] playing [you are] not going to win.'" (*Id.*) Plaintiff states that Defendant Neal was trying to provoke Plaintiff, and before Defendant Neal left, Neal stated: "Everyone who wears these uniforms is my friend, so you won't be here long. [You are] going to be in Level 4 or 5 with your stupid friends." (*Id.*) Then, as Defendant Neal was leaving, he said: "Wait, what was that? Let me get your I.D.; I'll just start today; by the way, the s[ergeant] wants you in the [prison counselor's] office for your dumb a[\*\*] grievance." (*Id.*)

Plaintiff "waited a few moments," and then he reported to the prison counselor's office. (*Id.*, PageID.5.) When Plaintiff arrived at the office, Defendant Neal "was in the office talking with" Defendant Smith. (*Id.*) After Defendants Neal and Smith were finished speaking, Defendant Smith said to Plaintiff: "so look, this is how this [is] going to go; either sign off this bulls[\*\*\*] or you'll read about it in the morning." (*Id.*) Plaintiff advised Defendant Smith that he would not be signing off on the grievance. (*Id.*)

The next day, February 14, 2024, Plaintiff woke up to Defendant Neal "banging on [Plaintiff's] bunk with his metal round counter." (*Id.*) Defendant Neal stated: "Grievance boy,

---

[2] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's filings.

there's one of many to come; report to the base, the s[ergeant] wants you." (*Id.*) The non-party sergeant reviewed Plaintiff "on a[n] insolence misconduct" that Defendant Neal had issued to Plaintiff. (*Id.*, PageID.5–6.) Later that week, Plaintiff spoke with Defendant Batheaos about the matter, explaining that Plaintiff was almost done with "VPP High Class, which is [a] mandatory class," and that Plaintiff had "just filled out [his] college financial papers and welding trade paperwork and [he] was in the next group for both." (*Id.*, PageID.6.) Plaintiff asked Defendant Batheaos to move Plaintiff "because [Defendant] Neal and other officers [were] targeting [Plaintiff] in th[e] unit with misconducts for writing grievances." (*Id.*) In response, Defendant Batheaos told Plaintiff to "apologize to [Defendant] Neal for writing a grievance on him, or wait until he moves on to another prisoner." (*Id.*) Plaintiff said that he would not apologize "for protecting [his] rights the proper way." (*Id.*) Defendant Batheaos then stated: "Well, Mr. Riley, I guess you'll be in Level 4 soon cause I don't move prisoner's unit[s] for staff and prisoner interactions." (*Id.*)

Plaintiff remained in the unit, and Defendant Neal continued to call Plaintiff "'grievance boy' and dumb f[***]s,'" and Defendant Neal continued to "bang[] on the metal rail on [Plaintiff's] bunk" in the mornings when Plaintiff "had callouts, ticket reviews, or grievance reviews." (*Id.*, PageID.8.)

On February 21, 2024, Defendant Hoolsema presided over the misconduct hearing for the insolence misconduct ticket that Defendant Neal had issued Plaintiff. (*Id.*) Plaintiff told Defendant Hoolsema that he had not made the statement at issue to Defendant Neal. (*Id.*) Defendant Hoolsema found Plaintiff guilty, stating: "I'm finding you guilty no matter what; if you fight it and make me do more work, it's going to be more days." (*Id.*, PageID.9.) At some point on the same day, Plaintiff received an allegedly improper grievance rejection letter from Defendant Voorhees

for a grievance that Plaintiff had previously filed. (*Id.*, PageID.10, 11.) Plaintiff alleges that he had already received a step II response from Defendant Howard regarding the grievance, but that Defendant Voorhees "falsified a document by back dating a grievance rejection letter." (*Id.*, PageID.12.) At unspecified times, Defendant Voorhees rejected "several [other] grievances" that Plaintiff had "sent by interdepartmental mail." (*Id.*)

On March 2, 2024, Defendant Harrison "continued to retaliate against [Plaintiff] by falsifying documents" and "making false reports" in grievance responses. (*Id.*, PageID.14.)

On March 7, 2024, Plaintiff's "cube was searched by" Defendants Neal and Plont, and Plaintiff observed that "a bag of 'spud'" was found. (*Id.*, PageID.17.) After the search was conducted, Plaintiff saw Defendants Neal and Plont speaking with Defendant Smith and non-party Correctional Officer Elliott. (*Id.*) Plaintiff heard Defendant Neal say, "I don't care where we found it; it's Riley's." (*Id.*) The next day, March 8, 2024, Plaintiff was "reviewed on a false [substance abuse] misconduct by [Defendant] Plont" for the "bag of 'spud.'" (*Id.*; *see* Misconduct Report, ECF No. 1-1, PageID.42.) Plaintiff states that another inmate told Plaintiff that the "spud" was his; however, the other inmate was not called as a witness. (Compl., ECF No. 1, PageID.18.) Plaintiff was found guilty of this misconduct charge and sentenced to ten days' loss of privileges. (Misconduct Hearing Report, ECF No. 1-1, PageID.43.)

On March 20, 2024, Defendant Harrison "mischaracteriz[ed] [Plaintiff's] grievance claims to try and reject grievances filed" and "ma[de] false reports in [Harrison's] grievance response by presenting false evidence to clear [Defendants] Neal and Plont of criminal behavior." (Compl., ECF No. 1, PageID.14–15.) Further, at an unspecified time, Defendant Harrison elevated another "class 2 insolence misconduct to a class [1] misconduct" because Plaintiff had two other insolence misconducts. (*Id.*, PageID.15.) Plaintiff told Defendant Harrison "that all 3 misconducts were

written by [Defendant] Neal and reminded [Harrison] that [Plaintiff] had been grieving [Neal]." (*Id.*, PageID.16.) In response, Defendant Harrison stated: "Well your time is up; we told you you[ are] not going to win this game." (*Id.*) Plaintiff ultimately pled guilty to the class 1 insolence misconduct (*Id.*)

On March 25, 2024, Defendant Neal and non-party Correctional Officer Pederson told Plaintiff to report to the control center to be reviewed on misconduct tickets for disobeying a direct order and insolence. (*See* Misconduct Hearing Reports, ECF No. 1-1, PageID.34, 40; *see also* Compl., ECF No. 1, PageID.18.) In response, Plaintiff said that he "just want[ed] a hearing" and he would "waive [his] review." (Compl., ECF No. 1, PageID.19.) Defendant Neal then stated: "If you don't go, I'm writing you another ticket." (*Id.*) As Plaintiff was leaving to go to the control center, he heard Defendant Neal state, "when we pack him up, he's mine; I want everything." (*Id.*)

Then, as Plaintiff was leaving the control center after being reviewed on the misconduct charges, "[Defendant] Harrison began to argue, which led to" Defendants Batheaos and Smith and non-parties unnamed Deputy Warden and unnamed Correctional Officer "being present." (*Id.*) The non-party Deputy Warden asked what was going on, and Plaintiff stated that he "was being harassed by [Defendant] Neal and being threatened by physical with sexual assault by [Defendant] Neal and that [Plaintiff] had b[een] going about things the right way, writing it up and [had] . . . also requested to be moved to a different housing unit." (*Id.* (phrasing in original retained).) After the non-party Deputy Warden spoke with Defendants Batheaos and Smith and the unnamed, non-party Correctional Officer in another room, Defendant Batheaos returned and told Plaintiff that he "was being moved but it might take a moment," and "did [Plaintiff] want to wait in 'the holding cell.'" (*Id.*, PageID.19–20.) As Plaintiff was walking toward the holding cell, Defendant Lawson "shoved [Plaintiff] into [Defendant] Smith," and Plaintiff "felt a sharp pain in [his] back." (*Id.*,

PageID.19.) Plaintiff turned to ask Defendant Smith "why he was grabbing [Plaintiff]," and "as [Plaintiff] did, all three officials began to wrestle [Plaintiff] slamming [him] against the doorway doors and walls." (*Id.*) Plaintiff walked to the holding cell after this incident. (*Id.*) Plaintiff then informed Defendant Lawson that Plaintiff "couldn't feel [his] shoulder" and "was in extreme pain" and that Plaintiff had a prior injury to his shoulder due to being shot. (*Id.*) Defendant Lawson responded: "You'll be ok; grieve it, I heard that's your thing." (*Id.*) Plaintiff then "scream[ed], 'I need medical attention.'" (*Id.*, PageID.20–21.) Defendant Lawson said, "You can see the nurse wherever you[ are] going." (*Id.*, PageID.21.)

Defendant Harrison then reviewed Plaintiff on an assault and battery misconduct ticket and an insolence misconduct ticket, which Defendant Smith had issued to Plaintiff. (*Id.*; Misconduct Report, ECF No. 1-1, PageID.38.) Plaintiff states that "at no time did [he] assault [Defendant] Smith," and he "was never in cuffs or any form of restraints" and was voluntarily walking to the holding cell. (Compl., ECF No. 1, PageID.21.) Plaintiff believes this misconduct ticket and the "subsequent guilty finding" were "done in retaliation for [Plaintiff's] engagement in 1st Amendment 'protective conduct' and to cover up [Defendant] Smith's misconduct." (*Id.*, PageID.22.) Plaintiff informed Defendant Harrison that he needed medical attention, and Defendant Harrison stated: "You'll be gone soon and you can get help there." (*Id.*)

Shortly thereafter, Plaintiff was transferred to LMF.[3] (*Id.*) When Plaintiff was transferred, "several documents and personal property was destroyed." (*Id.*, PageID.16–17 (phrasing in original retained).) At LMF, Plaintiff had an x-ray of his shoulder and chest, and the x-ray showed

---

[3] Plaintiff does not indicate the specific date on which he was transferred to LMF; however, based on a copy of a health care request form that Plaintiff attached to his complaint, Plaintiff was housed at LMF by at least March 27, 2024. (Health Care Request Form, ECF No. 1-1, PageID.28.)

"no structural damage, but [the] medical provider . . . did not rule out nerve damage or pain." (*Id.*, PageID.22.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment right to be free from retaliation and his Eighth Amendment rights. Additionally, the Court construes Plaintiff's complaint to raise Fourteenth Amendment due process claims. As relief, Plaintiff seeks compensatory and punitive damages, as well as his "costs in the suit." (*Id.*, PageID.24.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Retaliation Claims

Plaintiff alleges that Defendants' actions were taken in retaliation for Plaintiff engaging in protected conduct, in violation of Plaintiff's First Amendment rights. (*See generally* Compl., ECF No. 1.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff alleges that he filed several grievances and made oral complaints. (*See generally* Compl., ECF No. 1.) At this stage of the proceedings, the Court assumes that Plaintiff engaged in protected conduct for purposes of his First Amendment claim.

### 2.    Adverse Action and Retaliatory Motive

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. The Court addresses Plaintiff's First Amendment retaliation claims below.

### a.    Defendant Smith's Statement on February 13, 2024, February 14, 2024, Insolence Misconduct Ticket, and Hearing Regarding Insolence Misconduct Ticket

Plaintiff alleges that on February 13, 2024, he went to the prison counselor's office to discuss a previously filed grievance, and when Plaintiff arrived at the office, Defendant Neal "was in the office talking with" Defendant Smith. (Compl., ECF No. 1, PageID.4.) After Defendants Neal and Smith were finished speaking, Defendant Smith said to Plaintiff: "so look, this is how this [is] going to go; either sign off this bulls[***] or you'll read about it in the morning." (*Id.*)

Plaintiff advised Defendant Smith that he would not be signing off on the grievance. (*Id.*) The following day, February 14, 2024, during Defendant Neal's rounds, Neal stated: "Grievance boy, there's one of many to come; report to the base, the s[ergeant] wants you." (*Id.*) The non-party sergeant then reviewed Plaintiff "on a[n] insolence misconduct" that Defendant Neal had issued to Plaintiff. (*Id.*, PageID.5–6.) On February 21, 2024, Defendant Hoolsema presided over the misconduct hearing for this insolence misconduct ticket. (*Id.*, PageID.8.) Plaintiff told Defendant Hoolsema that he had not made the statement at issue to Defendant Neal. (*Id.*) Defendant Hoolsema found Plaintiff guilty, stating: "I'm finding you guilty no matter what; if you fight it and make me do more work, it's going to be more days." (*Id.*, PageID.9.)

Here, Plaintiff alleges that Defendant Neal issued him an insolence misconduct in retaliation for Plaintiff filing a prior grievance. The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"). Based on the facts alleged by Plaintiff, which are summarized above, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Neal premised on the issuance of the February 14, 2024, insolence misconduct ticket.

With respect to Defendant Smith, Plaintiff and Smith interacted on February 13, 2024, when Defendant Smith asked Plaintiff if he would be signing off (i.e., dropping) his grievance. At that time, Defendant Smith said to Plaintiff: "so look, this is how this [is] going to go; either sign off this bulls[***] or you'll read about it in the morning." (Compl., ECF No. 1, PageID.4.) Although Defendant Neal issued Plaintiff an insolence misconduct ticket the next day, Plaintiff alleges no facts to suggest that Defendant Smith had any knowledge of, let alone involvement in, the issuance of this misconduct ticket. And, Defendant Smith's vague statement on February 13,

2024, on its own, is insufficient to show an adverse action that would deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."). Thus, Plaintiff's First Amendment retaliation claim against Defendant Smith premised on Smith's February 13, 2024, statement and the issuance of the February 14, 2024, insolence misconduct ticket will be dismissed for failure to state a claim.

Finally, as to Defendant Hoolsema, Plaintiff alleges that during the February 21, 2024, misconduct hearing for the insolence misconduct ticket, Defendant Hoolsema found Plaintiff guilty, stating: "I'm finding you guilty no matter what; if you fight it and make me do more work, it's going to be more days." (Compl., ECF No. 1, PageID.9.) Any intended retaliation claim against Defendant Hoolsema is entirely conclusory. Plaintiff alleges no facts to suggest that Defendant Hoolsema found Plaintiff guilty because Plaintiff had engaged in prior protected conduct. *See Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Under these circumstances, Plaintiff fails to state a First Amendment retaliation claim against Defendant Hoolsema premised on the February 14, 2024, insolence misconduct ticket.

### b.    Defendant Batheaos's Denial of Plaintiff's Request to Move to Another Unit

After Defendant Neal issued Plaintiff the February 14, 2024, insolence misconduct ticket, later that week, Plaintiff asked Defendant Batheaos to move Plaintiff "because [Defendant] Neal and other officers [were] targeting [Plaintiff] in th[e] unit with misconducts for writing grievances." (Compl., ECF No. 1, PageID.6.) In response, Defendant Batheaos told Plaintiff to

"apologize to [Defendant] Neal for writing a grievance on him, or wait until he moves on to another prisoner." (*Id.*) Plaintiff said that he would not apologize "for protecting [his] rights the proper way." (*Id.*) Defendant Batheaos then stated: "Well, Mr. Riley, I guess you'll be in Level 4 soon cause I don't move prisoner's unit[s] for staff and prisoner interactions." (*Id.*)

In *Thaddeus-X*, 175 F.3d at 397, the United States Court of Appeals for the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "trivialize the First Amendment." *Thaddeus*, 175 F.3d at 397 (citing *Bart*, 677 F.2d at 625). Here, Plaintiff alleges no facts to suggest that Defendant Batheaos had an obligation to move Plaintiff to another unit, and following the reasoning of *Thaddeus*, Batheaos's denial of Plaintiff's request and accompanying statement do not constitute adverse action. Therefore, Plaintiff fails to state a First Amendment retaliation claim against Defendant Batheaos premised on Batheaos's denial of Plaintiff's request to move to another unit.

### c.    Defendant Neal's Verbal Harassment

Plaintiff alleges that he remained in the unit where Defendant Neal worked, and Defendant Neal continued to call Plaintiff "'grievance boy' and dumb f[***]s,'" and Defendant Neal continued to "bang[] on the metal rail on [Plaintiff's] bunk" in the mornings when Plaintiff "had callouts, ticket reviews, or grievance reviews." (Compl., ECF No. 1, PageID.8.)

The Court does not minimize Plaintiff's experience; however, as discussed above, minor harassment, as Plaintiff alleges here, is insufficient to constitute adverse action. Accordingly, Plaintiff's First Amendment retaliation claim against Defendant Neal premised on this harassment will be dismissed for failure to state a claim.

### d.      Grievance Rejections and Responses

Plaintiff alleges that Defendants' rejections of his grievances and responses to his grievances were retaliatory. (*See, e.g.*, Compl., ECF No. 1, PageID.12, 14, 18 (alleging that Plaintiff had already received a step II response from Defendant Howard regarding a grievance, but that Defendant Voorhees "falsified a document by back dating a grievance rejection letter," alleging that Defendant Harrison "continued to retaliate against [Plaintiff] by falsifying documents" and "making false reports" in grievance responses, and alleging that on March 20, 2024, Defendant Harrison "mischaracteriz[ed] [Plaintiff's] grievance claims to try and reject grievances filed" and "ma[de] false reports in [Harrison's] grievance response by presenting false evidence to clear [Defendants] Neal and Plont of criminal behavior").)

Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim). Under the circumstances alleged by Plaintiff, the Court concludes that the rejection and denial of Plaintiff's grievances did not constitute action. Therefore, Plaintiff fails to state a First Amendment retaliation claim premised on Defendants' rejections and denials of his grievances.

### e.      Substance Abuse Misconduct Ticket

Plaintiff alleges that on March 7, 2024, Plaintiff's "cube was searched by" Defendants Neal and Plont, and Plaintiff observed that "a bag of 'spud'" was found. (Compl., ECF No. 1, PageID.17.) After the search was conducted, Plaintiff saw Defendants Neal and Plont speaking with Defendant Smith and non-party Correctional Officer Elliott. (*Id.*) Plaintiff heard Defendant Neal say, "I don't care where we found it; it's Riley's." (*Id.*) The next day, March 8, 2024, Plaintiff

was "reviewed on a false [substance abuse] misconduct by [Defendant] Plont" for the "bag of 'spud.'" (*Id.*; *see* Misconduct Report, ECF No. 1-1, PageID.42.)

Here, Plaintiff's retaliation claim falls at the third step because he fails to allege any facts to suggest that his cell was searched and the substance abuse misconduct ticket was issued because Plaintiff had engaged in prior protected conduct. Instead, Plaintiff's retaliation claim regarding these events is entirely conclusory, and "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial." *See Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (internal quotation marks omitted).

Accordingly, Plaintiff's First Amendment retaliation claims regarding the substance abuse misconduct ticket will be dismissed for failure to state a claim.

> **f.    Defendant Harrison Elevating Class 2 Misconduct Ticket to Class 1 Misconduct Ticket**

Plaintiff alleges that at an unspecified time, Defendant Harrison elevated a "class 2 insolence misconduct to a class [1] misconduct" because Plaintiff had two other insolence misconducts. (Compl., ECF No. 1, PageID.15.) Plaintiff told Defendant Harrison "that all 3 misconducts were written by [Defendant] Neal and reminded [Harrison] that [Plaintiff] had been grieving [Neal]." (*Id.*, PageID.16.) In response, Defendant Harrison stated: "Well your time is up; we told you you[ are] not going to win this game." (*Id.*) Plaintiff ultimately pled guilty to the class 1 insolence misconduct (*Id.*)

As with some of Plaintiff's other retaliation claims, this retaliation claim is entirely conclusory. Based on Plaintiff's own allegations, Defendant Harrison elevated the "class 2 insolence misconduct to a class [1] misconduct" *because Plaintiff had two other insolence misconducts*, not because Plaintiff had engaged in prior protected conduct. (*Id.*, PageID.15.) And, Defendant Harrison's statement about Plaintiff's "time [being] up" is insufficient on its own to

constitute an adverse action. *See, e.g.*, *Thaddeus*, 175 F.3d at 397. Therefore, Plaintiff's First Amendment retaliation claim premised on Defendant Harrison elevating a class 2 misconduct charge to a class 1 misconduct charge will be dismissed for failure to state a claim.

**g.    March 25, 2024, Disobeying a Direct Order and Insolence Misconduct Charges and Interaction with Defendant Neal**

Plaintiff alleges that on March 25, 2024, Defendant Neal and non-party Correctional Officer Pederson told Plaintiff to report to the control center to be reviewed on misconduct tickets for disobeying a direct order and insolence. (*See* Misconduct Hearing Reports, ECF No. 1-1, PageID.34, 40; *see also* Compl., ECF No. 1, PageID.18.) In response, Plaintiff said that he "just want[ed] a hearing" and he would "waive [his] review." (Compl., ECF No. 1, PageID.19.) Plaintiff claims that Defendant Neal then stated: "If you don't go, I'm writing you another ticket." (*Id.*) As Plaintiff was leaving to go to the control center, he heard Defendant Neal state, "when we pack him up, he's mine; I want everything." (*Id.*)

To the extent that Plaintiff intended to raise a First Amendment retaliation claim regarding the March 25, 2024, disobeying a direct order and insolence charges and his interaction with Defendant Neal on that date, Plaintiff's claim will be dismissed for failure to state a claim because Plaintiff merely alleges the ultimate fact of retaliation without any supporting facts. Plaintiff fails to allege any facts about the events leading to the issuance of the misconduct charges or about who issued the misconduct charges. And, Plaintiff's interaction with Defendant Neal on that date does not constitute adverse action. *See, e.g.*, *Thaddeus*, 175 F.3d at 397.

Accordingly, Plaintiff's First Amendment claim regarding the March 25, 2024, disobeying a direct order and insolence misconduct charges and the interaction with Defendant Neal on that date will be dismissed for failure to state a claim.

### h.        March 25, 2024, Altercation

Plaintiff alleges that as he was leaving the control center after being reviewed on disobeying a direct order and insolence misconduct charges, "[Defendant] Harrison began to argue, which led to" Defendants Batheaos and Smith and non-parties unnamed Deputy Warden and unnamed Correctional Officer "being present." (Compl., ECF No. 1, PageID.18.) Plaintiff informed the non-party Deputy Warden about Defendant Neal's harassment. (*Id.*) The non-party Deputy Warden spoke with Defendants Batheaos and Smith and the unnamed, non-party Correctional Officer in another room; Defendant Batheaos returned and told Plaintiff that he "was being moved but it might take a moment," and "did [Plaintiff] want to wait in 'the holding cell.'" (*Id.*, PageID.19–20.) As Plaintiff was walking toward the holding cell, Defendant Lawson "shoved [Plaintiff] into [Defendant] Smith," and Plaintiff "felt a sharp pain in [his] back." (*Id.*, PageID.19.) Plaintiff turned to ask Defendant Smith "why he was grabbing [Plaintiff]," and "as [Plaintiff] did, all three officials began to wrestle [Plaintiff] slamming [him] against the doorway doors and walls." (*Id.*)

To the extent Plaintiff intended to allege that the March 25, 2024, altercation was retaliatory, Plaintiff's retaliation claim fails at the third step because Plaintiff alleges no *facts* to show that Defendants acted due to any prior protected conduct. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted). Therefore, Plaintiff's First Amendment retaliation claim premised on the March 25, 2024, altercation will be dismissed for failure to state a claim.

i.      **March 25, 2024, Assault and Battery and Insolence Misconduct Tickets**

Plaintiff alleges that after the altercation on March 25, 2024, Defendant Harrison reviewed Plaintiff on an assault and battery misconduct ticket and an insolence misconduct ticket, which Defendant Smith had issued to Plaintiff. (Compl., ECF No. 1, PageID.21; Misconduct Report ECF No. 1-1, PageID.38.) Plaintiff states that "at no time did [he] assault [Defendant] Smith," and he "was never in cuffs or any form of restraints" and was voluntarily walking to the holding cell. (Compl., ECF No. 1, PageID.21.) Plaintiff believes this misconduct ticket and the "subsequent guilty finding" were "done in retaliation for [Plaintiff's] engagement in 1st Amendment 'protective conduct' and to cover up [Defendant] Smith's misconduct." (*Id.*, PageID.22.)

Although it is clear that Plaintiff believes that these misconduct tickets were issued "in retaliation for [Plaintiff's] engagement in 1st Amendment 'protective conduct,'" Plaintiff does not identify the specific "protective conduct" at issue. (*Id.*) And, even assuming, without deciding, that Plaintiff's reference to "protective conduct" is a reference to one of the grievances that Plaintiff previously filed, Plaintiff's alleges only that one event followed the other event. However, although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476

(discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive). Here, Plaintiff alleges no *facts* from which to reasonably infer that the misconduct charges and subsequent conviction were motivated by any protected conduct. Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claim premised on the March 25, 2024, assault and battery and insolence misconduct tickets will be dismissed for failure to state a claim.

### j.    Transfer to LMF

Finally, Plaintiff alleges that he was transferred from KCF to LMF. (Compl., ECF No. 1, PageID.22.) If Plaintiff intended to claim that this transfer was retaliatory, this claim will be dismissed for failure to state a claim. Transfers to the general population of another prison or between general population units at one prison typically are not an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). Here, Plaintiff does not allege any facts to show that the transfer constituted an adverse action. *See, e.g.*, *Hill*, 630 F.3d at 474–75. Thus, any First Amendment retaliation claim premised on Plaintiff's transfer to LMF will be dismissed for failure to state a claim.

### k.    Summary

In summary, Plaintiff's First Amendment retaliation claim against Defendant Neal premised on the issuance of the February 14, 2024, insolence misconduct ticket will remain in the case. All of Plaintiff's other retaliation claims will be dismissed for failure to state a claim.

### B.    Eighth Amendment Claims

### 1.    Excessive Force Claims

Plaintiff alleges that Defendants Lawson and Smith used excessive force against him on March 25, 2024, in violation of Plaintiff's Eighth Amendment rights. (Compl., ECF No. 1, PageID.20.)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'"

*Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that on March 25, 2024, as Plaintiff was walking toward the holding cell, Defendant Lawson "shoved [Plaintiff] into [Defendant] Smith," and Plaintiff "felt a sharp pain in [his] back." (Compl., ECF No. 1, PageID.19.) Plaintiff turned to ask Defendant Smith "why he was grabbing [Plaintiff]," and "as [Plaintiff] did, all three officials began to wrestle [Plaintiff] slamming [him] against the doorway doors and walls." (*Id.*) Plaintiff walked to the holding cell after this incident. (*Id.*) At some point, Plaintiff informed Defendant Lawson that Plaintiff "couldn't feel [his] shoulder" and "was in extreme pain" and that Plaintiff had a prior injury to his shoulder due to being shot. (*Id.*)

As noted above, "[t]he objective component requires the pain inflicted to be 'sufficiently serious,'" *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298), and not every shove or restraint gives rise to a constitutional violation. *Parrish*, 800 F.2d at 604. Here, Plaintiff alleges that Defendant Lawson "shoved [Plaintiff] into [Defendant] Smith," and Plaintiff's allegations suggest that Defendant Smith "grabb[ed] [Plaintiff]." (Compl., ECF No. 1, PageID.19.) Plaintiff then alleges that "all three officials began to wrestle [Plaintiff] slamming [him] against the doorway doors and walls"; however, Plaintiff does not identify these "three officials." (*Id.*) As to

22

the actions that Plaintiff specifically attributes to Defendants Lawson and Smith, under the circumstances alleged by Plaintiff, the Court concludes that Plaintiff has failed to show that Lawson's shove and Smith "grabbing" Plaintiff satisfies the objective component of the relevant two-prong test. *See, e.g.*, *Wilkins*, 559 U.S. at 38. As to Plaintiff's allegation about the "three officials," none of whom Plaintiff identifies by name, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Plaintiff's "[s]ummary reference to a single, five-headed 'Defendants' [or officers] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)).

Accordingly, for the reasons set forth above, Plaintiff's Eighth Amendment excessive force claims will be dismissed for failure to state a claim.

### 2.    Medical Care Claims

Plaintiff alleges that after the March 25, 2024, altercation with Defendants Lawson and Smith, Plaintiff requested medical attention, and his requests were denied. (Compl., ECF No. 1, PageID.19.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, U.S. Const. amend. VIII, and the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103–04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock*, 273 F.3d at 702.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

24

As to the objective component, Plaintiff alleges that after the altercation, he informed Defendant Lawson that Plaintiff "couldn't feel [his] shoulder" and "was in extreme pain" and that Plaintiff had a prior injury to his shoulder due to being shot. (Compl., ECF No. 1, PageID.19.) Then, when Plaintiff was at LMF, he had an x-ray of his shoulder and chest, and the x-ray showed "no structural damage, but [the] medical provider . . . did not rule out nerve damage or pain." (*Id.*, PageID.22.) At this early stage of the proceedings, the Court assumes, without deciding, that Plaintiff has satisfied the objective component of the relevant two-prong test.

Turning to the subjective component, Plaintiff must allege sufficient facts to show that "the official [was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official "also dr[e]w the inference," *Farmer*, 511 U.S. at 837. As to Defendant Lawson, Plaintiff alleges that he informed Defendant Lawson that Plaintiff "couldn't feel [his] shoulder" and "was in extreme pain" and that Plaintiff had a prior injury to his shoulder due to being shot. (Compl., ECF No. 1, PageID.19.) Plaintiff "scream[ed], 'I need medical attention,'" (*id.*, PageID.20–21), and Defendant Lawson said, "You can see the nurse wherever you[ are] going." (*Id.*, PageID.21.) Plaintiff's interaction with Defendant Lawson occurred on March 25, 2024, at KCF, and by March 27, 2024, Plaintiff was housed at LMF; however, it is not clear on which specific date Plaintiff left KCF. At this stage of the proceedings, the Court must take Plaintiff's allegations as true and in the light most favorable to him. Under these circumstances, at this time, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Lawson premised on Lawson's denial of Plaintiff's request for medical care on March 25, 2024.

However, with respect to Defendant Harrison, Plaintiff alleges only that he informed Defendant Harrison that he needed medical attention, and Defendant Harrison stated: "You'll be

gone soon and you can get help there." (*Id.*, PageID.22.) Plaintiff does not allege that he told Defendant Harrison why he needed medical attention. Because Plaintiff does not allege that he told Defendant Harrison why he needed medical attention, Plaintiff fails to show that Defendant Harrison knew of a substantial risk of harm to Plaintiff, let alone that Defendant Harrison knew of such a risk and disregarded it. Therefore, Plaintiff's Eighth Amendment claim against Defendant Harrison will be dismissed for failure to state a claim.

In summary, Plaintiff's Eighth Amendment claim against Defendant Lawson premised on Lawson's denial of Plaintiff's request for medical care will remain in the case. The Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Harrison for failure to state a claim.

### 3. Verbal Harassment Claims

Plaintiff seeks to hold Defendants liable for verbal harassment. (*See generally* Compl., ECF No. 1.)

Although unprofessional, allegations of verbal harassment or taunts by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam). Additionally, allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Accordingly, Plaintiff fails to state an Eighth Amendment claim premised on verbal harassment.

26

C.     **Fourteenth Amendment Due Process Claims**

1.     **Claims Regarding Misconduct Charges**

Plaintiff alleges that Defendants violated his Fourteenth Amendment due process rights as related to the issuance of class I and class II misconduct tickets to Plaintiff. (*See generally* Compl., ECF No. 1.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a

protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that he received several insolence misconduct tickets, at least one substance abuse misconduct for possessing "spud," at least one disobeying a direct order misconduct ticket, and at least one assault and battery misconduct ticket. Although not always specifically articulated by Plaintiff, it appears that he was found guilty of many of these misconduct charges, and he pled guilty to at least one misconduct charge.

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. However, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation or non-bond status for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80

F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).[4]

Accordingly, for the reasons set forth above, Plaintiff fails to state any Fourteenth Amendment procedural due process claims against Defendants regarding his various misconduct charges.

### 2.    Claims Regarding Grievance Responses

Plaintiff seeks to hold Defendants Voorhees, Harrison, and Howard liable for their responses to Plaintiff's grievances, alleging that these Defendants improperly rejected some of Plaintiff's grievances, mischaracterized some of Plaintiff's grievances, and falsified information in their grievance responses. (*See generally* Compl., ECF No. 1.)

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue*, 80 F. App'x at 430; *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim*,

---

[4] If Plaintiff had been found not guilty of any of the misconduct charges, then he would not have received any sanctions for a misconduct conviction. Under these circumstances, Plaintiff would necessarily fail to show that he received any sanctions for these misconduct charges that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87. Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any response, or lack thereof, to Plaintiff's grievances did not deprive Plaintiff of due process.

Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding Defendants' responses to his grievances will be dismissed for failure to state a claim.[5]

### 3.    Claims Regarding Deprivation of Personal Property

Plaintiff alleges that when he was transferred from KCF to LMF, "several documents and personal property was destroyed." (Compl., ECF No. 1, PageID.16–17 (phrasing in original retained).) To the extent that Plaintiff intended to raise a due process claim regarding the deprivation of Plaintiff's property, as explained below, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must

---

[5] Moreover, to the extent that Plaintiff seeks to hold Defendants liable due to their supervisory positions, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). And, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his property.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Having conducted the review required by the PLRA, the Court determines that Defendants Smith, Harrison, Voorhees, Plont, Batheaos, Howard, and Hoolsema will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, for failure to state a claim, all of Plaintiff's claims against remaining Defendants Neal and Lawson *except* Plaintiff's First Amendment retaliation claim against Defendant Neal premised on the issuance of the February 14, 2024, insolence misconduct ticket, and Eighth Amendment claim against Defendant Lawson premised on Lawson's denial of Plaintiff's request for medical care on March 25, 2024.

Plaintiff's First Amendment retaliation claim against Defendant Neal premised on the issuance of the February 14, 2024, insolence misconduct ticket, and Eighth Amendment claim

31

against Defendant Lawson premised on Lawson's denial of Plaintiff's request for medical care on

March 25, 2024, remain in the case.

      An order consistent with this opinion will be entered.


Dated:   November 5, 2025              /s/ *Maarten Vermaat*
                                               Maarten Vermaat
                                               United States Magistrate Judge